UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

EUGENE KAMARRIE JAQUIS WILLIAMS,

Defendant.

Case No. 1:25-cr-96

Hon. Hala Y. Jarbou

______________________________________/

**OPINION**

Defendant Eugene Kamarrie Jaquis Williams has been charged with interference with commerce by robbery, 18 U.S.C. § 1951(a), brandishing a firearm during and in relation to a crime of violence, *id.* § 924(c)(1)(A)(ii), theft of firearms from a federal firearms licensee, *id.* § 924(m), and being a felon in possession of firearms, *id.* § 922(g)(1). Now before the Court are three motions in limine: Williams's motion to admit evidence relied on by his expert witness (ECF No. 104), Williams's motion to admit statements made by the prosecuting attorneys (ECF No. 111), and the Government's motion to admit evidence of Williams's prior convictions (ECF No. 108). As explained below, the Court will grant in part Williams's motion to admit evidence relied upon by his expert witness, deny Williams's motion to admit the statements of the prosecuting attorneys, and deny the Government's motion to admit Williams's prior convictions. The Court will also require Williams to file a notice on or before December 1, 2026, indicating what specific portions of the below-discussed evidence he will seek to admit at trial.

**A. Evidence Relied Upon by Expert**

Williams intends to raise an insanity defense under 18 U.S.C. § 17(a), and he seeks to admit evidence relied upon by his expert witness, Dr. Alicia Gilbert, in forming her opinion about his mental condition. Gilbert is a Federal Bureau of Prisons (BOP) psychologist who conducted a court-ordered forensic examination of Williams. Williams seeks to admit the following evidence that Gilbert relied on:

- Police reports;
- Body camera and surveillance videos;
- Information about Mr. Williams' prior history as reported by his family;
- Information provided by Mr. Williams regarding personal, medical, and mental history;
- Phone calls placed by Mr. Williams from the BOP;
- Psychological testing at the [BOP];
- Observations of Mr. Williams during interviews and testing; and
- Observations of Mr. Williams in housing at the [BOP].

(Def.'s Br. in Supp. of First Motion 2, ECF No. 105.) The Government does not object to several items on the list: surveillance videos, psychological testing, and observations of Williams during interviews and testing and in housing at the BOP. The Government objects to the remainder of the listed items; the Court will address each objection below.

**1. Police Reports**

Williams seeks to admit the contents of police reports related to his arrest that Dr. Gilbert considered when evaluating his mental health. The Government objects that the police reports contain hearsay, that is, out-of-court statements introduced for the truth of the matter asserted in those statements. *See* Fed. R. Evid. 801(c) (defining hearsay), Fed. R. Evid. 802 (prohibiting

hearsay). Williams does not dispute that the police reports contain hearsay, but he seeks to admit their contents under Rule 703 of the Federal Rules of Evidence. That rule provides that "if the facts or data" relied upon by an expert in forming their opinion "would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."[1] Fed. R. Evid. 703. Williams argues that the police reports will help the jury evaluate Dr. Gilbert's opinion.

It appears that some of Dr. Gilbert's conclusions derive from information in the police reports that was not available from other sources—for example, the witness account of Williams's attempt to hijack the minivan. (*See* Gilbert Report 14–15, 19, ECF No. 39.) Allowing Dr. Gilbert to testify about the police reports will help the jury evaluate her opinion, and the Government does not identify any significant prejudice that would result from admission. Thus, the Court finds that the probative value of the evidence substantially outweighs its prejudicial effect, rendering it admissible. However, Dr. Gilbert may only testify as to the portions of the police reports that were directly relevant to her report. And the Government is entitled to a limiting instruction regarding the jury's use of the evidence if it so chooses. *See* Fed. R. Evid. 703, advisory committee's note to 2000 amendment ("If the otherwise inadmissible information is admitted under this balancing test, the trial judge must give a limiting instruction upon request, informing the jury that the underlying information must not be used for substantive purposes.").

---

[1] Rule 703 also provides that an expert may rely on otherwise inadmissible evidence only "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. The Government does not argue that any of the evidence in question is not the sort that an expert in the field would reasonably rely on; indeed, the Government does not challenge Dr. Gilbert's ability to rely on this evidence, only her ability to disclose it to the jury. Thus, the Court assumes (here and throughout the Opinion) that the Government concedes that this evidence is the sort a reasonable expert in the field would rely on.

**2. Personal History**

Williams also seeks to admit under Rule 703 information about his personal history as reported by his family to Dr. Gilbert. The Government argues that this evidence is unreliable hearsay, and that even if the jury is given a limiting instruction, jurors may still use the evidence for an impermissible purpose—that is, they may rely on the evidence for the truth of the matter asserted. However, a person's life history is obviously relevant to their mental health, so this evidence has substantial probative value for the purpose of evaluating Dr. Gilbert's opinion. And the potential unreliability of the information—based on the family members' potentially faulty memories or biased motives—is a commonsense matter that the jury will likely grasp and that the Government is free to explore on cross-examination. Thus, the Court finds this evidence admissible under Rule 703.

**3. Body Camera Footage**

Williams next seeks to admit police body camera footage from the day of the alleged crime. The Government objects to the admission of this evidence but does not clarify the specific grounds of its objection. Some of the body camera footage is presumably hearsay if it depicts people making statements. However, Dr. Gilbert's report relies substantially on the body camera footage, so that footage is highly probative for the purpose of evaluating her opinion. Accordingly, that evidence is admissible under Rule 703, subject to a potential limiting instruction. Of course, Rule 703 only permits Williams to introduce the otherwise inadmissible portions of the body camera footage that are directly relevant to Dr. Gilbert's opinion.

**4. Williams's Statements**

Additionally, Williams seeks to admit his own statements to Dr. Gilbert during her clinical interviews. The Government objects that these statements are hearsay. The Court agrees with Williams that these statements are at least admissible under Rule 703 for the purpose of evaluating

Dr. Gilbert's expert opinion, for the same reason that the prior categories of evidence considered above are admissible. But Williams also seeks to admit these statements as substantive evidence without a limiting instruction.

Some of these statements, Williams contends, are not being used for a hearsay purpose. For example, Williams's statements that reveal delusional thinking are not being used for the truth of the matter asserted, but rather to show that Williams harbored obviously false beliefs. As the Government points out, whether a statement regarding a delusion is used for the truth of the matter asserted hinges on the precise language and content of the statement. To be more specific, it hinges on whether Williams is relaying a past delusional belief—which would make the statement hearsay—or expressing a present delusional belief. In the former case, jurors would be relying on Williams to provide an honest account of his past beliefs and experiences, which the hearsay rule is designed to forbid. In the latter case, jurors would not be relying on Williams's honesty because—if they accept the defense's argument—they would understand Williams to be mistaken in his delusional assertions. Without more detail regarding the specific statements that Williams seeks to admit, the Court is unable to determine whether they are hearsay.

In the alternative, Williams argues that these statements—as well as statements to Dr. Gilbert regarding Williams's personal and medical history—are substantively admissible under Rule 803(4) as statements made for medical treatment or diagnosis. Rule 803 allows the admission of otherwise inadmissible hearsay if the statement in question "is made for—and is reasonably pertinent to—medical diagnosis or treatment; and . . . describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). Williams argues that his statements to Dr. Gilbert were made for the purpose of diagnosing and treating his

mental health conditions.[2] The Government responds that the statements were for the purpose of determining criminal responsibility and raising an insanity defense, not for diagnosis or treatment. To determine the applicability of Rule 803(4), the Court must evaluate whether the interviews had "the *primary purpose* of medical diagnosis" or treatment or were "for some other purpose." *United States v. Kappell*, 418 F.3d 550, 556 (6th Cir. 2005). "[I]t is the declarant's understanding of the purposes for which the statements were made that matters under Rule 803(4)." *United States v. Kootswatewa*, 893 F.3d 1127, 1133 (9th Cir. 2018).

Williams first argues that his statements were for the purpose of treatment, as the BOP provided medical care based on Dr. Gilbert's psychological evaluation of Williams. The Government argues that the BOP's care was actually the result of a different psychologist's evaluation. It is not entirely clear from Dr. Gilbert's report whether her evaluation informed Williams's treatment. Regardless, there is a more significant obstacle for Williams's argument: while treatment may have been one motive for his interactions with Dr. Gilbert, it is difficult to say that it was the primary motive. Williams was presumably aware that Dr. Gilbert's court-ordered examination would impact his potential insanity defense, and the risk of criminal liability likely loomed large in his mind. Thus, the Court is not convinced that Williams's primary purpose was to obtain treatment.

Williams also contends that his statements were for the purpose of receiving a diagnosis. That is, even if William was expecting Dr. Gilbert's opinion to be useful at trial, the reason it would be useful is that it would provide a diagnosis. *See* 18 U.S.C. § 17 (a defendant raising an insanity defense must prove they had "a severe mental disease or defect"). The Government

[2] Although Dr. Gilbert is a psychologist rather than a physician, that fact does not preclude the application of Rule 803(4). *See United States v. Kappell*, 418 F.3d 550, 556 (6th Cir. 2005) ("Rule 803(4) covers statements made to a psychotherapist for purposes of medical diagnosis or treatment, even though the therapist is not a physician or nurse.").

counters that applying Rule 803(4) in this scenario would contradict the rule's rationale. "The rationale behind [Rule 803(4)] is that statements made by an individual to physicians for purposes of diagnosis or treatment are considered exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive proper care." *Field v. Trigg Cnty. Hosp., Inc.*, 386 F.3d 729, 735 (6th Cir. 2004). As the Government notes, a person who consults a doctor for the purpose of obtaining a diagnosis that can inform their medical care has a much stronger motive to be honest than a person who consults a doctor for the purposes of obtaining a diagnosis that they can use to avoid criminal liability.

However, the Advisory Committee explicitly considered and rejected the idea that statements to doctors consulted only for litigation purposes should be inadmissible. As the note to Rule 803 explains:

> Conventional doctrine has excluded from the hearsay exception, as not within its guarantee of truthfulness, statements to a physician consulted only for the purpose of enabling him to testify. While these statements were not admissible as substantive evidence, the expert was allowed to state the basis of his opinion, including statements of this kind. The distinction thus called for was one most unlikely to be made by juries. The rule accordingly rejects the limitation. This position is consistent with the provision of Rule 703 that the facts on which expert testimony is based need not be admissible in evidence if of a kind ordinarily relied upon by experts in the field.

*See* Fed. R. Evid. 803, advisory committee's note to 1972 proposed rules. Accordingly, courts have held that a statement to a doctor for the purpose of obtaining a diagnosis that will be used in litigation is admissible under 803(4). *See United States v. Farley*, 992 F.2d 1122, 1125 (10th Cir. 1993); *Morgan v. Foretich*, 846 F.2d 941, 950 (4th Cir. 1988); *O'Gee v. Dobbs Houses, Inc.*, 570 F.2d 1084, 1088–89 (2d Cir. 1978); *United States v. Lechoco*, 542 F.2d 84, 89 n.6 (D.C. Cir. 1976); *United States v. Iron Shell*, 633 F.2d 77, 83 (8th Cir. 1980).

Admittedly, at least one court has held otherwise. In *United States v. Keegan*, 161 F.4th 1334, 1341 (11th Cir. 2025), *cert. denied*, No. 26-5227, 2026 WL 2976920 (U.S. Oct. 5, 2026),

the Eleventh Circuit ruled that statements to a doctor who is retained only for litigation do not fall under 803(4). The court reasoned that if a speaker seeks a diagnosis for litigation, "the medical diagnosis [i]s not 'the object, aim, or purpose' of the 'action or activity.'" *Id.* (quoting *For*, The American Heritage Dictionary of the English Language (5th ed. 2016)). Holding otherwise, the court explained, would allow speakers to avoid cross-examination by simply making statements to a doctor who could then repeat those statements in court. This result would permit an unacceptable end run around the hearsay rules. *Id.* at 1341–42.

The Eleventh Circuit acknowledged that its holding contradicted the Advisory Committee's Note to Rule 803. But it declined to follow the Advisory Committee's Note, explaining that the Note's "rationale is contradicted by a later amendment to the Rules of Evidence." *Id.* at 1342. Recall that the Advisory Committee's justification for allowing the admission of statements to a doctor retained only for litigation purposes was that those statements would already be admissible in order to evaluate the doctor's opinion, and instructing the jury to *not* consider those statements as substantive evidence would be too confusing. But in 2000—several decades after the Note to Rule 803 was written—Rule 703 was "amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted." Fed. R. Evid. 703, advisory committee's note to 2000 amendments. Thus, "[i]f the otherwise inadmissible information is admitted" for the purposes of evaluating the expert's opinion, "the trial judge must give a limiting instruction upon request, informing the jury that the underlying information must not be used for substantive purposes." *Id.* As the Eleventh Circuit explained, "the 2000 amendment to Rule 703 *requires* juries to make exactly the same distinction that the Note [to Rule 803(4)] says they cannot handle." *Keegan*, 161 F.4th at 1344. So it seems that the

2000 amendment undermines the argument for a broad reading of 803(4) that includes doctors consulted only for litigation. And as the Eleventh Circuit noted, the above-cited case law interpreting 803(4) in line with the Advisory Committee Note predates the 2000 amendment to Rule 703, reducing that case law's persuasive value.

However, *Keegan* is not binding precedent, and the Court declines to adopt the Eleventh Circuit's holding. It is true that the rationale of the 2000 amendment is in tension with the rationale of Rule 803(4). But the 2000 amendment only purports to alter Rule 703, not Rule 803, and there is no reason to interpret it as amending an entirely separate rule. *Cf. Branch v. Smith*, 538 U.S. 254, 273 (2003) (courts should not lightly assume that subsequent legislation implicitly repeals prior legislation). Even if the Advisory Committee has apparently changed its mind regarding the rationale underlying Rule 803(4), the Rules of Evidence (like any state or regulation) are interpreted according to their text—not according to the subsequent intent of their issuing body. So a subsequent change in rationale, absent a change in the text of Rule 803(4), has little or no significance.

Moreover, while courts are not bound by the Advisory Committee Notes, *see Keegan*, 161 F.4th at 1342, the text of Rule 803(4) unambiguously supports the Committee's broad reading, making reliance on the Notes unnecessary. Rule 803 refers to statements "made for . . . medical diagnosis or treatment." Fed. R. Evid. 803(4). It thus explicitly provides for situations where someone seeks a diagnosis but not treatment. There is no requirement that the diagnosis itself be for the purpose of medical treatment. In other words, the rule turns on a person's immediate purpose for speaking with a doctor rather than their ultimate purpose. By analogy, one might say that most people work a job for the purpose of making money. Of course, making money is usually not their ultimate goal; people generally acquire money to purchase things they desire. But it is

still correct to say that they work for the purpose of making money. In the same way, a person seeking to raise an insanity defense consults a doctor for the purpose of obtaining a diagnosis, even if their ultimate goal is to avoid criminal liability. The Eleventh Circuit rejected this broad reading of 803(4) as "atextual," *Keegan*, 161 F.4th at 1342, but the exact opposite is true: the text itself is broad, and *Keegan* imposes a limitation that can be found nowhere in the text.

To be clear, this Court does not disagree with the underlying logic of *Keegan*, and recognizes that a broad interpretation of 803(4) allows for potential abuse by litigants. Moreover, the Court makes no attempt to reconcile the rationale of Rule 803(4) and the amended Rule 703. But it is not this Court's role to refashion the Rules to be more cohesive in the face of unambiguous text. And the Court reads the plain text of Rule 803(4) to foreclose *Keegan*'s interpretation, as attractive as that interpretation may be from a policy standpoint.

The Government, resisting this conclusion, cites an observation from the Sixth Circuit that Rule 803(4) does not permit the admission of statements that are made merely for the purpose of "obtaining evidence." *Kappell*, 418 F.3d at 556. That offhand remark in *Kappel* is based on an Eighth Circuit decision holding that a child abuse victim's statement to a psychologist identifying her alleged abuser was not admissible under Rule 803(4). *United States v. Beaulieu*, 194 F.3d 918, 920–21 (8th Cir. 1999). In *Beaulieu*, the court reasoned that the victim's statement was not connected to any diagnosis or treatment, and that the interview with the psychologist was merely to obtain evidence for court. *Id.* at 921. That situation differs from the present case, where there is no dispute that Williams sought a diagnosis from Dr. Gilbert. *Kappel* and *Beaulieu* shed no light on the issue here—namely, whether a statement for the purpose of diagnosis is admissible if the diagnosis is in turn obtained for the purpose of gathering evidence. Similarly unavailing is the Government's citation to *United States v. Rodriguez*, 651 F. App'x 44 (2d Cir. 2016), where the

court held that the defendant's statements to a doctor regarding the circumstances of the alleged crime were inadmissible because they were unrelated to any medical diagnosis. *See id.* at 47 ("It is not clear what if anything the proffered hearsay statements about the events surrounding the assault on [the victim] would add to the jury's understanding of Dr. Bardey's expert opinion that [the defendant] suffered from Post–Traumatic Stress Disorder stemming from traumatic incidents in his childhood.").

In sum, Williams's statements to Dr. Gilbert are substantively admissible under Rule 803(4) as long as they relate to medical history, past or present symptoms or sensations, their inception, or their general cause.

**5. Phone Calls**

Williams also seeks to admit recordings of phone calls he placed to family members while incarcerated at the BOP. Like some of his statements to Dr. Gilbert, Williams argues that these statements will be used not for the truth of the matter asserted, but rather to reveal that Williams was suffering from delusions. As noted above, statements about delusional beliefs may be introduced for non-hearsay purposes to demonstrate that a person is delusional, depending on exactly what is asserted in the statements. Because Williams provides no details regarding these statements, the Court cannot evaluate their admissibility. Some of these calls were provided to Dr. Gilbert for her report, so their contents are admissible under Rule 703 for the purpose of evaluating Dr. Gilbert's opinion. The Government, however, represents that Williams has not disclosed the phone call recordings in question. Thus, if Williams seeks to introduce any phone calls, he must provide those calls to the Government.

* * *

In sum, the Court will partially grant Williams's motion to admit the evidence relied upon by Dr. Gilbert as set out above.

**B. Representations by Government Counsel**

In his second motion in limine, Williams seeks to admit representations made by the Government's counsel to the Court regarding Williams's insanity defense. Most of these representations consist of the Government's assertions in briefs and hearings that it agrees with Dr. Gilbert's opinion and believes that Williams is eligible for the insanity defense. These representations were made while the Court was considering the entry of a special verdict of not guilty by reason of insanity pursuant to a plea deal; ultimately, however, the Court rejected the plea (ECF No. 60) and the Government decided to proceed to trial. Although the representations in question are hearsay, Williams argues that they qualify as statements of a party opponent under Rule 801(d)(2). As explained below, the Court finds that even if the statements are admissible under Rule 801(d)(2), they are independently barred by Rule 403.

**1. Statements of Party Opponent**

The Government argues that statements of its employees and agents are not admissible under Rule 801(d)(2) "[b]ecause the agents of the Government. . . are traditionally unable to bind the sovereign." *United States v. Kampiles*, 609 F.2d 1233, 1246 (7th Cir. 1979). In response, Williams cites two criminal cases where the Sixth Circuit treated statements by federal agents as admissions of a party opponent, although in both cases the government conceded the point. *United States v. Branham*, 97 F.3d 835, 851 (6th Cir. 1996) ("The government concedes that Rule 801(d)(2)(D) contemplates that the federal government is a party-opponent of the defendant in a criminal case . . . ."); *United States v. Fox*, 134 F.4th 348, 382 (6th Cir. 2025) ("[T]he government has never argued, neither before us nor the district court, that it was not a party opponent."). The Sixth Circuit has elsewhere suggested in dicta that it agrees with the government's position in *Branham* and *Fox*. *United States v. Reed*, 167 F.3d 984, 989 (6th Cir. 1999) ("Sumpter and Maddox were acting as agents of the government, and this court has interpreted 'a matter within

the scope of the agency' broadly enough that 'statements' of Sumpter or Maddox would be admissible against the government." (citing *Branham*, 97 F.3d at 851)).

Admittedly, there are two Sixth Circuit cases that cut against this position. *See United States v. Pandilidis*, 524 F.2d 644, 650 (6th Cir. 1975) (out-of-court statements by IRS agents were not admissible because party opponent rule does not apply to government agents); *United States v. Evans*, No. 89-2052, 1990 WL 32581, at *1 (6th Cir. Mar. 23, 1990) (out-of-court statements by assistant United States attorney were not admissible because "as a matter of policy, [Rule 801(d)(2)] does not apply to a statement made by a government agent that the defense seeks to admit as substantive evidence in a criminal case" (citing *Pandilidis*, 524 F.3d at 650)). However, in *United States v. Morgan*, 581 F.2d 933, 938 (D.C. Cir. 1978), the D.C. Circuit rejected *Pandilidis* as expressing an outdated rule displaced by the Federal Rules of Evidence; it also noted that *Pandilidis* addressed "mere out-of-court assertions by a government agent" rather than "out-of-court statements in which the government itself has manifested its 'adoption or belief.'" *Morgan*, 581 F.2d at 938. The Sixth Circuit subsequently cited *Morgan* with approval in *Branham*, 97 F.3d at 851.

Putting this together, *Branham*, *Fox*, and *Reed* support the view that government agents qualify as party opponents under Rule 801(d)(2). *Pandilidis* and *Evans* are to the contrary, but those cases deal with out-of-court remarks by individual agents—not, as here, statements made by the Government to the Court itself. Ultimately, it is unnecessary to decide whether the statements are admissible under 801(d)(2) because, as explained below, their admission is barred by Rule 403.

**2. Rule 403**

The Government argues that even if its statements are admissible under 801(d)(2), they should be excluded under Rule 403 because their probative value, if any, "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . or

needlessly presenting cumulative evidence." Fed. R. Evid. 403. Some of the Government's contentions in support of this point are unconvincing. The Government asserts that the evidence at issue has little relevance and is unnecessarily cumulative because the jury will be presented with Dr. Gilbert's opinion, and thus has no need to hear the Government's views on that opinion. But hearing that the Government itself concurred in the defense's position certainly has probative value. Moreover, the Government's concerns that the jury should not hear its prior statements regarding an issue that only an expert has knowledge to testify about are misplaced. A statement of a party opponent can be admitted even if the speaker does not have personal knowledge of the subject, and even if the statement contains an otherwise inadmissible opinion. *See* Fed. R. Evid. 801, advisory committee's note to 1972 proposed rules (party opponent rule is traditionally free "from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge"); *Jordan v. Binns*, 712 F.3d 1123, 1128–29 (7th Cir. 2013). In fact, a statement of a party opponent "may be admissible even if it is an opinion of law." *Donlin v. Aramark Corp.*, 162 F.R.D. 149, 150 (D. Utah 1995) (collecting cases). Moreover, although Rule 704 prohibits an expert witness from opining on the ultimate issue of "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," Fed. R. Evid. 704(b), that rule applies only to the testimony of experts—by contrast, "a lay witness is allowed to testify to an ultimate issue." *Walker v. Daimler-Chrysler Corp.*, No. 02-CV-74698, 2005 WL 8154351, at *9 (E.D. Mich. Nov. 16, 2005). Here, the declarant would be the prosecuting attorney, who is not an expert witness.

However, the Court ultimately agrees with the Government that the probative value of this evidence is outweighed by the potential for prejudice and jury confusion. As the Government observes, this is not a case where a party has made contradictory representations without reason.

*See, e.g.*, *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991) ("Confidence in the justice system cannot be affirmed if any party is free, wholly without explanation, to make a fundamental change in its version of the facts between trials, and then conceal this change from the final trier of the facts."); *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories."). Rather, the Government advocated one position pursuant to a plea deal and then, when the Court declined to accept that plea, adopted a different position. If the jury is merely told that the Government once expressed its support for Williams's insanity defense, it will likely infer that the Government is acting dishonestly or unreasonably, which is certainly prejudicial to the prosecution. And the context for the Government's change in position cannot be admitted, because the jury cannot hear about the Court's prior rejection of Williams's plea—that evidence would certainly be prejudicial to the defense, and would risk usurping the role of the jury. In sum, because there is no way to admit the Government's statements without misleading the jury, the Court will exclude them under Rule 403.

**C. Prior Convictions**

Finally, the Government moves to admit evidence of two prior convictions on Williams's record: one for carrying a concealed weapon in 2021, and the other for the unlawful driving away of a motor vehicle in 2022. Rule 404 provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)–(2). The Government

argues that Williams's past convictions are relevant to his state of mind—namely, whether he "was unable to appreciate the nature and quality or the wrongfulness of his acts," which the jury must decide for purposes of Williams's insanity defense. 18 U.S.C. § 17(a). The Government asserts that past convictions for crimes similar to the charged conduct demonstrate that Williams had been previously punished for such conduct and therefore likely understood that it was wrong. Williams objects that whether he understood his conduct to be illegal is not at issue in this case, and that evidence of his past convictions should be excluded under Rule 403 because its probative value is substantially outweighed by its prejudicial effect.

Admitting these past convictions would cause significant prejudice to Williams, as the jury might improperly rely upon them to make negative inferences about Williams's character. The Government asserts that when a defendant relies on an insanity defense, "[t]here is . . . no risk of the primary prejudicial effect of prior convictions, that the jury will prejudge a defendant's guilt on the basis of his past criminal record, because the defendant does not deny commission of the act." *United States v. Bradshaw*, 935 F.2d 295, 302 (D.C. Cir. 1991) (cleaned up); *see also United States v. Diekhoff*, 535 F.3d 611, 618 (7th Cir. 2008) ("The danger of unfair prejudice is lessened somewhat in a case where the only issue is the defendant's sanity."). But the conclusion does not follow from the premises. The risk is not that jurors will infer that Williams committed this offense because he committed prior crimes; the risk is that jurors will infer that Williams was sane when he committed this offense because he has previously committed crimes while sane—in other words, insanity is not necessary to explain his allegedly criminal intent. That inference is just as prejudicial as an inference that a defendant committed the present offense.[3]

[3] The Government also argues that "there is the possibility that an extensive criminal record will prove prejudicial to *the government* by permitting the inference that the defendant is insane either because he cannot appreciate the nature of his acts or because he continues to commit the same crime for which he has consistently been punished in the same easily-detectable way." *Bradshaw*, 935 F.2d at 302. But that reasoning is inapplicable here, where Williams has not

Moreover, Williams argues that the probative value of the convictions is minimal. The Government cites cases holding that past convictions for similar crimes can show that a defendant likely understood the wrongfulness of their actions. *Bradshaw*, 935 F.2d at 301; *United States v. Tracy*, 36 F.3d 187, 194 (1st Cir. 1994). But Williams contends that his insanity defense is not premised on an inability to understand the wrongfulness of his acts; indeed, Dr. Gilbert found that Williams likely did understand that his actions were illegal and wrong. (Gilbert Rep. 19–20.) Rather, Williams's defense is premised on Dr. Gilbert's conclusion that Williams did not understand the *quality* of his actions. (*Id.* at 20.) If Williams does not contest that he knew his acts were illegal, the past convictions are essentially duplicative evidence, and therefore have low probative value. *See Broad St. Energy Co. v. Endeavor Ohio, LLC*, 806 F.3d 402, 409 (6th Cir. 2015) (duplicative nature of evidence lowers its probative value).

The Court agrees with Williams's argument to a point. If indeed Williams does not present any argument to the effect that he did not understand the wrongfulness of his conduct, the prior convictions may not come in because their probative value is substantially outweighed by their prejudicial effect. However, if Williams chooses to make an argument at trial regarding his ability to understand the wrongfulness of his acts, it may open the door to admission of his prior convictions.

* * *

In conclusion, the Court will grant in part Williams's motion to admit the evidence underlying Dr. Gilbert's opinion, as set out above; deny Williams's motion to admit statements of the prosecuting attorneys; and deny the Government's motion to admit Williams's prior

---

been punished several times for the same easily detectable crime. Moreover, the fact that Williams could theoretically make an argument that renders the convictions beneficial to his case is largely irrelevant when Williams has chosen not to make that argument (as is his right) and is opposing admission of the evidence.

convictions. In addition, on or before December 1, 2026, Williams must file a notice stating what specific portions of the police reports, body camera footage, and phone calls Williams seeks to question Dr. Gilbert about and/or introduce as evidence. The Government may file a response on or before December 8, 2026, raising any further objections to this evidence.

An order will enter in accordance with this Opinion.

Dated: November 16, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE